## THE STATE v. NELSON, *Appellant.*

1.  **Practice, Criminal:** EVIDENCE : REQUEST BY DECEASED NOT TO
    PROSECUTE HIS SLAYER. A request by the deceased that his
    slayer be not prosecuted is inadmissible in evidence on a trial for
    murder. The prosecution of the defendant is a matter to be deter-
    mined by the state.

2.  ———— : ———— : DYING DECLARATIONS. Declarations of a deceased
    person made under a belief of impending dissolution and after the
    declarant had abandoned all hope of recovery are admissible in
    evidence as dying declarations.

3.  ———— : ———— : ————. A statement made as a dying declaration
    after deceased had been told by his physicians that he must die,
    and after he had said that he had no hope of recovery and had
    given directions for the division of his property among his rel-
    atives and where he should be buried, and designated the minister
    whom he wanted to preach his funeral, was properly admitted as
    such in evidence.

4.  ———— : ————. Evidence that a witness for the state on a trial for
    murder had the reputation of being a rash, dangerous and turbu-
    lent man when in liquor is not admissible for any purpose.

5.  ———— : ————. On a trial for murder, where defendant offered
    evidence to the effect that he received bruises over the eyes and
    across the forehead at the hands of the deceased, it is competent for
    the state to show by a witness in rebuttal that he saw defendant's
    face, on the day of the difficulty and afterwards and was close to
    him and saw no wounds upon his person.

6.  ———— : ———— : CROSS-EXAMINATION : DISCRETION OF COURT. The
    trial court has much discretion in determining the extent to which
    a cross-examination may be carried. Where a witness testified on
    direct examination that he took an axe to defend himself against
    a person and chased him with it some distance to a house, it is not
    an abuse of discretion to allow the opposing party to show by the
    witness on cross-examination that he followed the person a dis-
    tance of two hundred yards to the house with uplifted axe, and
    that witness threw the axe through the window at such person
    after the latter had entered the house.

7.  ———— : MURDER : INSTRUCTION. A homicide produced by a blow
    from a weapon in the hands of a person in a violent passion aroused

by abusive or insulting words spoken by the deceased will not constitute murder in the first degree ; but, notwithstanding such passion so aroused, if the killing was done wilfully, premeditatedly and of malice aforethought, it will be murder in the second degree. (*Affirming State v. Gee*, 85 Mo. 649.)

*Appeal from Platte Circuit Court.*—Hon. J. M. Sandusky, Judge.

Affirmed

No brief for appellant.

*John M. Wood*, Attorney General, for the State.

(1) It was not competent to prove that deceased said before his death that he did not want defendant prosecuted, as he himself was to blame. "In criminal prosecutions the state sustains no such relation to the party injured as will render his declarations admissible in evidence against the state." *State v. Curtis*, 70 Mo. 594. (2) The dying declarations were made *in extremis* and were properly admitted. *State v. Chambers*, 87 Mo. 406 ; *State v. Johnson*, 76 Mo. 121 ; *State v. Kilgore*, 70 Mo. 546 ; *State v. Draper*, 65 Mo. 335 ; *State v. Simmons*, 50 Mo. 370 ; Whar. Cr. Ev., secs. 279, 282. (3) Evidence offered to show that Ferrill, one of the state's witnesses, was a rash, turbulent and dangerous man when in liquor was properly excluded. The witness was not a party to the difficulty, and could only be impeached as any other witness. (4) Testimony offered in rebuttal by the state, to show there were no scars or blood on defendant's face, was properly received ; he having offered evidence that such was the fact. (5) The fifth and sixth instructions for the state are sustained by the ninth and tenth approved in the case of *State v. Gee*, 85 Mo. 647. The ninth instruction for the state was approved in the same case.

BLACK, J.—The defendant on Christmas day, the twenty-fifth of December, 1888, struck John Johnson on the head with an axe, inflicting a wound from which Johnson died on the twenty-seventh of the same month. Hence this indictment in the Platte circuit court for murder in the first degree, upon which the defendant was convicted of murder in the second degree and sentenced to twenty-five years' imprisonment.

On the day before mentioned the defendant went to his father's house in company with Ferrill and Burgess. At that place they met Hack Nelson—as he is called in the record—who was a brother of the defendant, and one Bias. The parties had been drinking before they assembled at the Nelson house, and while there they continued drinking until they were all under the influence of liquor. It seems that the defendant and his brother Hack got into a scuffle over a dog; and we next find the parties in the kitchen. Ferrill, the chief witness for the state, in substance, says: I saw Hack Nelson pick up a sugar-bowl and hit Burgess on the head; he then grabbed a butcher-knife and I caught him; he struggled to get loose and I threw him on the window and got the knife; he cursed, and threatened to strike me and told me to leave the house. The defendant then spoke up and ordered me to get out of there. I walked out, leaving defendant and his brother and the deceased in the kitchen, got on my horse and rode to Stafford's, which was about two hundred yards distant, taking the knife with me. I looked back and saw Hack Nelson in the yard with a plank in his hand. I went back and Hack came at me with the plank and I told him to keep his distance; I walked up toward the deceased and the defendant. Defendant had an axe drawn on the deceased, who was standing with his hands out talking with Charlie (defendant), as if he wanted to reason with him. I said to Johnson (deceased), "Let's go;" he turned his head around and looked

back and saw the lick coming from Charlie in time to throw his head down and arm up; Charlie hit him on the right side of the head with the blade of the axe and he fell; Charlie then raised the axe as though he was going to hit me, and I went to the fence, jumped over into the road, and then saw Hack Nelson coming after me with the axe.

The physician who was called in says he found the deceased lying on the ground, twelve or fourteen feet from the porch; that there was a wound on the head, six inches long, an inch in depth and extending from the top of the head to the eye. There was another wound just above the eye, which appeared to have been made by a blunt instrument. The true bone of the arm, the ulna, was cut in two, one inch below the elbow joint. Other testimony for the state tends to show that deceased had nothing in his hands, and was killed while attempting to restore peace between the brothers.

The defendant, testifying in his own behalf, says Ferrill had the butcher-knife, and threatened to cut the heart out of Hack; that he went out of the kitchen to get the axe to drive Ferrill from his brother; that Johnson followed him out of the house; that he picked up the axe and started back, when Johnson struck him three times with a board. Says he told Johnson to quit, but Johnson paid no attention to what he said, and he then raised the axe to ward off the blows. Hack Nelson says he saw Johnson with something in his hand, drawn up, when his brother struck at Johnson.

The deceased, in his dying declarations, put in evidence by the state, stated that he did not hit defendant with a plank; that he had nothing to hit him with.

1. The defendant is not represented in this court. In examining the record, the first exception which we find is that concerning the evidence of Dr. Watson, who was called in immediately after the difficulty. He was asked by the defendant, on cross-examination, if the deceased at that time said he did not want defendant

prosecuted.   The state's objection to the question being
sustained, the witness was asked if deceased made that
statement after he had given up all hope of recovery,
and was conscious that he must die.   The state's objec-
tion to the question was again sustained.   The court
did not err in these rulings ; for it was a matter of no
consequence what the deceased wanted done in respect
of the prosecution of defendant.   That was a matter for
the state, and not the deceased, to determine.   It may
be added here that when the state laid a foundation for,
and introduced, the dying declarations, at a subsequent
period of the trial, the defendant was allowed full cross-
examination.

2.   The next objection is that the court erred in
admitting the dying declarations,. because no sufficient
ground had been laid therefor.   These declarations
were made at about four o'clock on the morning of the
twenty-seventh of December, less than two days after
the wounding, and some six or seven hours before death
ensued.   The deceased had been told by his physicians
that he must die.   He said he had no hope of recovery,
and gave directions as to the division of his property
among his relatives, and where he should be buried,
and designated the minister whom he wanted to preach
his funeral.   It is clear that he made the declarations
under a belief of impending dissolution, and after he
had abandoned all hope of recovery, and they were,
therefore, properly received in evidence. *State v.*
*Elkins, ante,* p. 344, and cases cited.

3.   Nor was there any error in excluding the
evidence offered by defendant to show that Ferrill, one
of the witnesses for the state, had the reputation of
being a rash, dangerous and turbulent man when in
liquor.   We do not see for what purpose this evidence
was offered, unless it was to discredit the evidence given
by Ferrill, and it was certainly not competent for that
purpose.

4.   Objection was also made to the evidence of Dr. Watson, given for the state in rebuttal, wherein he says he saw the defendant on the day of, and after, the difficulty ; that he was close to defendant and saw his face, but saw no wounds upon his person.   Defendant claimed, and offered evidence to the effect, that he received bruises over the eyes and across the forehead, at the hands of the deceased.   The evidence of Dr. Watson tended to show that defendant received no such bruises..   The objection stated in the record, that it was not proper rebuttal evidence, is clearly untenable.

5.   The only other objection to the evidence which need be noticed is to that brought out by the state on the cross-examination of Hack Nelson.   This witness, in his direct examination, stated that Ferrill, the party before mentioned, threatened to cut his heart out ; that he took the axe from defendant's hand, intending to run Ferrill off, and, being asked for what purpose he took it, he said :   " To defend myself.   I chased him over to Stafford's."   On cross-examination, the state pursued this matter to the extent of showing by the witness that he followed Ferrill with uplifted axe to Stafford's house, a distance of two hundred yards ; that Ferrill ran in the house, and witness threw the axe through the window at Ferrill.   This evidence, brought out by the state, was but a more full development of the facts stated by the witness in chief.   The trial court has much discretion in determining how far the cross-examination may be pursued, and we see no abuse of that discretion in this examination.

6.   The court gave instructions on the subject of murder in the first and second degrees, and man-slaughter in the second, third and fourth degrees, reasonable doubt and self-defense, and upon the credibility of witnesses.   The fifth, in substance, told the jury that if defendant, in a violent passion, aroused by abusive or insulting words, spoken by the deceased to

defendant, struck deceased with an axe, then there was no murder in the first degree; but, notwithstanding there may have been a state of passion, provoked by abusive or insulting words, yet, if the killing was done wilfully, premeditatedly and of malice aforethought, as those terms had been before defined, this would be murder in the second degree. The words wilfully, premeditatedly and of malice aforethought had been properly defined. The instruction is the same as that approved in *State v. Gee*, 85 Mo. 649. The instruction on self-defense is also couched in substantially the same language as the thirteenth instruction, approved in the case just cited.

We have discovered no error in the instructions, in the absence of any specific objections made to them, and the judgment is, therefore, affirmed. All concur.